IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALBERT W. MALCOM,              )
                               )
           Plaintiff,          )
                               )
      v.                       )     Civil Action No. 05-797- KAJ
                               )
JOANNE B. BARNHART, Commissioner )
of Social Security,            )
                               )
           Defendant.          )

---

**MEMORANDUM OPINION**

---

Thomas V. McDonough, Esq., Delaware Volunteer Legal Services, Inc., P.O. Box 7306, Wilmington, Delaware 19803; Counsel for Plaintiff.

Sandra Romanogle, Esq., Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101; Counsel for Defendant.
    Of Counsel:  Donna L. Calvert, Esq., Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101.

---

September 15, 2006
Wilmington, Delaware



JORDAN, District Judge

I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 9) filed by plaintiff Albert W. Malcom ("Malcom"),[1] and a Cross-Motion for Summary Judgment (D.I. 11) filed by the defendant, Joanne B. Barnhart, Commissioner of Social Security (the "Commissioner"). Malcom brings his motion under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying him disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). For the reasons that follow, both motions will be denied and the case remanded to the Administrative Law Judge ("ALJ") for proceedings consistent with this opinion.

II. BACKGROUND

A. *Procedural Background*

Malcom applied for disability insurance benefits on November 5, 1999, initially alleging that, due to a heart condition, he became unable to work on October 22, 1998. (D.I. 8 at 107-10.) After the application was denied both initially and upon reconsideration (*id.* at 47-49, 51-54, 55-59), Malcom requested a hearing before an ALJ. (*Id.* at 60.) The first hearing was on November 9, 2001. (*Id.* at 81.) At the hearing, the ALJ requested that Malcom submit to an intelligence test and psychological examination. (*Id.* at 589-90.) On February 25, 2002, upon review of the record,

---

[1]Filings in this case and government records alternately show the plaintiff's name spelled "Malcom" and "Malcolm". (*See* D.I. 10, D.I. 11.) Since he appears to sign his name "Malcom" (D.I. 8 at 110) and since his counsel uses that spelling, that is the spelling used herein.

1

including the intelligence test, the ALJ concluded that Malcom was mildly retarded but nevertheless affirmed the denial of disability benefits because Malcom "had the residual functional capacity to perform simple, routine, repetitive tasks at all exertional levels." (*Id.* at 41.) On April 12, 2002, Malcom filed a request for a review by the Appeals Council. (*Id.* at 93.) On August 6, 2004, the Appeals Council remanded the case to the ALJ, after concluding that the ALJ had not "fully address[ed] the medical opinions of record" and that the diagnosis of Malcom as being mildly retarded "appear[ed] to be inconsistent with the evidence of record." (*Id.* at 44-45.) On January 31, 2005 another hearing was held for Malcom. (*Id.* at 592.) On March 10, 2005, the ALJ found that Malcom was not disabled within the meaning of the Act. (*Id.* at 14-19.) On September 23, 2005 the Appeals Council denied Malcom's request for review of the ALJ's decision. (*Id.* at 4-6.)   Malcom now seeks review by this Court under 42 U.S.C. § 405(g).

    B.    *Pertinent Facts*[2]

        1.    *The Shifting Record*

One of the chief challenges in this case has been Malcom's shifting story. When he applied to the Social Security Adminstration ("SSA") for disability benefits in November 1999, he listed his disabling condition as "Heart Condition" and stated that he became disabled on October 22, 1998. (D.I. 8 at 107.) In March 2000, he participated in the preparation of a "Disability Report" that was submitted to the SSA and which listed a series of new complaints to explain why he could not work. (*Id.* at

---

[2] The following background information is pertinent to the present decision. There are, of course, important facts relating to Malcom's medical history which are not included here because they do not bear on the bases for remand.

123-32). Besides his heart condition, Malcom said he suffered from "knee problems . . . hearing loss . . . [and] shoulder pain." (*Id.* at 124.) He also moved back the date that he claims marked the onset of his disability, to May 1993. (*Id.*) That was a fortunate move for him, since he was advised by the SSA in May 2000 that he could only receive benefits "for a disability which began before March 1996 – [because] this is the date [he] last [met] the disability insured status requirement." (*Id.* at 111.) In February 2000, Dr. Stephen J. Rodgers, M.D., a non-treating/non-examining occupational physician hired by Malcom's attorney, gave support to yet another earlier disability date claimed by Malcom. (*Id.* at 233-37.) Dr. Rodgers reviewed Malcom's records and decided Malcom became permanently disabled in 1991. (*Id.* at 237.) There appear to be no objective findings or medical explanations in the report to directly support a disability starting in 1991. (*See id.* at 233-37.) Instead, Dr. Rodgers apparently relied on Malcom's claim, in papers filed with the VA, that he last worked in 1991. (*Id.* at 234, 237.)

Malcom attended school until the eighth grade, when he dropped out to start working. (*Id.* at 545, 598). He attended normal classes and, although he claims he did not do well in school, he is able to read and write. (*Id.* at 130, 540, 598-99.) Malcom's first job out of school was for a construction company, where he worked until he was drafted into the Army in 1967. (*Id.* at 539, 599-600.) Records from the United States Army and the United States Department of Veterans Affairs ("VA") indicate that Malcom was trained and worked as a helicopter mechanic in Vietnam. (*Id.* at 122, 233, 262.) Malcom told the ALJ that his training in helicopter maintenance was discontinued when

3

he was sent to Vietnam to drive in a motor pool. (*Id.* at 601.) However, that assertion appears to be contradicted both by an Army record that lists under the heading "education and training completed" the notation "ACFT Maint Crewman" (*id.* at 122) and by a form Malcom submitted to the SSA in which he answered "yes" to the question "Have you completed any type of special job training, trade or vocational school?" and then listed "helicopter mechanic (Basic)" as the type of training he had completed (*id.* at 130).

Malcom's story about his work history also has inconsistencies. After he returned from Vietman, Malcom worked as a spray painter for Chrysler (*id.* at 540, 602), and then for A1 Auto Parts (*id.* at 602-03). He claimed that he worked for A1 for about 18 years, until approximately 1995 (*id.* at 603), but that is contradicted by his earnings records, which indicate he had essentially no earnings for the years 1980-84. (*Id.* at 71.) Malcom told the ALJ that he left A1 because he had a heart attack in 1995 (*id.* at 603), but he later testified that he left because the owner of the company died (*id.* at 611). The latter version is consistent with his representations to a social worker. (*Id.* at 540.) The earliest objective evidence in the record that Malcom experienced any heart problems appears to date from October 1998. (*Id.* at 190; *see also id.* at 107.)

Although Malcom now claims to have been unemployed from 1991 until the present (*id.* at 108), the record contains evidence to the contrary. In 1997, after filing a disability claim with the VA, Malcom told a physician that he last worked in 1996 as a self-employed maintenance man working on homes and cars. (*Id.* at 469.) Also in 1997, Malcom told his treating nurse that he was "a car repairman." (*Id.* at 185.) He

4

told a therapist in 2000 that he had been a "truck driver . . . full time" for the previous three years. (*Id.* at 524, 529.) Those statements conflict with Malcom's claim during a disability determination interview in 2002 that he last worked "10 years ago."[3] (*Id.* at 545.)

It is not clear from the record when Malcom first asserted that he was mentally disabled, but the issue does not appear to have arisen at any point before he was tested in 2002. Prior to the psychological testing undertaken in January 2002 at the ALJ's request (*id.* at 17), there is no record that Malcom had any mental disability. Indeed, the record is to the contrary, including Malcom's conversation with a mental health professional less than a month before the January 2002 testing. (*See id.* at 540.)[4] He dropped out of the eighth grade at the age of 16, but he is literate, as is evidenced both by his own admission and by the numerous forms he has filled out over the years while seeking government benefits. (*See, e.g, id.* at 107-10, 123-32, 540, 573-74.) As noted earlier, he completed armed forces training as a helicopter mechanic (*id.* at 17, 233, 262) and he worked as an automobile mechanic (*id.* at 185), an automobile painter (*id.* at 540), and a driver (*id.*), so he undisputedly had the mental wherewithal to acquire training and to function as more than an unskilled laborer.

---

[3]Malcom has previously been found less than credible by those charged with reviewing his claims for government benefits. Besides, the ALJ in this case, who found "the allegations made are less than fully credible" (D.I. 8 at 40), the Board of Veterans' Appeals concluded that Malcom's reasons for claiming dental benefits from the VA were "implausible" (*id.* at 262, 267), and lacked any competent evidentiary support (*id.* at 266-67).

[4]The reference is to a December 19, 2001 "Mental Health Consultation Report," in which the examiner noted that Malcom had an eighth grade education, can read and write, and had a "generally intact" memory. (D.I. 8 at 540.)

Nevertheless, something prompted the ALJ to request that Malcom undergo a psychological evaluation (*id.* at 589), and that evaluation included IQ testing. Malcom submitted to testing by S.M. Iqbal, Ph.D., on January 28, 2002, and a report was submitted by Dr. Iqbal on February 7, 2002. (*Id.* at 544-55.) The results of this examination showed that, on a Weschsler Adult IQ Test, Malcom had a Full Scale IQ of 64, indicative of mild retardation. (*Id.* at 17, 547.) Additionally, Dr. Iqbal observed that Malcom was unmotivated to work, although he had no mental or physical symptoms that "would prevent him from working the kind of work he was doing."[5] (*Id.* at 548-49.) In response to Dr. Iqbal's questioning, Malcom was candid about why he is seeking disability benefits: He said he wanted to qualify for disability so that he did not have to "run around" and could "relax and live," and receive "all the benefits from all the agencies." (*Id.* at 547.)

That last comment of Malcom's likely refers to VA benefits he is already receiving. On August 21, 1997, Malcom was awarded nonservice-connected pension benefits from the VA (*Id.* at 453.) The VA found Malcom had no single disability or combination of disabilities that met the required sixty to seventy percent disability threshold, but it nevertheless awarded him benefits based on a combination of "other factors" such as "age, education, and occupational background." (*Id.*)

For purposes of receiving social security disability benefits, Malcom's disability

---

[5] Dr. Iqbal inaccurately implies, however, that Malcom has only done unskilled work during his life. (D.I. 8 at 547 ("all his life he has done some unskilled jobs")). That ignores the work that Malcom would had to have done to qualify as a helicopter mechanic and the work he did as an automobile mechanic, a painter, and a truck driver, positions that it seems would qualify as skilled or semi-skilled work, depending on the specific responsibilities.

6

insurance ran out as of March 31, 1996. (*Id.* at 36, 44.)  Malcom must prove that before that date, he became disabled within the meaning of the Act.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. 404.131(a).

### 2. *The ALJ's Decisions*

To determine whether a claimant is entitled to social security disability benefits, an ALJ applies a sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520.  *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (stating the five steps); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986) (same).

> Under that five step analysis, the [ALJ] determines first whether an individual is currently engaged in substantial gainful activity.  If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings.  If an individual is found not to be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment.  If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations.  If the individual meets or equals the list of impairments, the claimant will be found disabled.  If he does not, the [ALJ] must determine if the individual is capable of performing his past relevant work considering his severe impairment.  If the [ALJ] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster*, 786 F.2d at 583-84 (internal citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued two decisions in Malcom's case.  On February 25, 2002, the ALJ issued his first decision, following the November 9, 2001 hearing.  (D.I. 8 at 35-42.)  He noted that Malcom's claim of disability was based on Malcom's allegations that he

suffered from "bilateral hearing loss, a heart condition, knee problems and shoulder pain." (*Id.* at 36.) Reviewing the record, however, the ALJ concluded that nothing established the existence of Malcom's heart problems prior to Malcom's date last insured. (*Id.* at 37.) Regarding musculoskeletal impairments, such as knee problems and shoulder pain, the ALJ reviewed the medical evidence and concluded that, "the record concerning these impairments does not establish[] a reasonable basis on which vocationally relevant limitations prior to the date last insured could be determined." (*Id.* at 38.) As to Malcom's claimed hearing loss, the ALJ found that "the record does not establish that the claimant's ability to hear and distinguish speech was sufficiently compromised, up to the date he was last insured, in order to be found as 'severe' within the context detailed above." (*Id.*)

The ALJ then turned to the results of the psychological testing he had ordered. He noted that Malcom had IQ scores in the mid to high 60s and some problems with memory, but the ALJ also noted that Malcom's "ability to understand, carryout [sic] and remember simple instructions remains intact" and that "there seems to be no limitations on his activities of daily living inherent in his mental status." (*Id.*) Apparently based on the recent IQ scores, the ALJ found that "[t]he medical evidence indicates that on or prior to March 31, 1996 [, i.e., the date last insured,] the claimant had mild mental retardation." (*Id.*) He then determined that, although mild retardation is a severe impairment within the meaning of the applicable regulations, it is not disabling in Malcom's case because it is "not severe enough to meet or medically equal" the impairments specified in the regulations. (*Id.*) The ALJ therefore looked at the

8

evidence to determine whether Malcom retained sufficient "residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy." (*Id.* at 39.) As noted earlier (*supra* Section II.A), the ALJ concluded that Malcom is not disabled because he has "the residual functional capacity to perform simple, routine, repetitive tasks at all exertional levels." (D.I. 8 at 41.)

Malcom appealed, and the SSA Appeals Council vacated the hearing decision and remanded the case to the ALJ. (*Id.* at 44-45.) Again as earlier noted (*supra* Section II.A), the Council concluded that the ALJ had not "fully address[ed] the medical opinions of record" and that the diagnosis of Malcom as being mildly retarded "appear[ed] to be inconsistent with the evidence of record." (D.I. 8 at 44.)

The ALJ held another hearing on January 31, 2005, and issued a second decision on March 10, 2005. (*Id.* at 14-19.) At that second hearing, the claim of disability again involved allegations of hearing loss, heart condition, and shoulder pain, but the alleged knee problem was not noted, and Malcom's alleged retardation made its first appearance as a claimed basis for disability. (*Id.* at 15.) The ALJ again concluded that Malcom is not disabled. (*Id.* at 14.) Once more, the ALJ reviewed the evidence associated with Malcom's allegations regarding physical problems and found in each instance that the problems did not qualify as disabling. (*Id.* at 16-18.) Next he turned to the Malcom's recent claim of mental disability. Unlike his conclusion after the first hearing, the ALJ this time stated:

> As pointed out by the Appeals Council, the diagnosis of mild mental retardation "appears to be inconsistent with the evidence of record". Claimant's career as a

9

truck driver for 18 years is described in the <u>Dictionary of Occupational Titles</u> as semi-skilled work .... Claimant attended school in regular classes until 8th grade, when he quit school to begin working. The claimant testified that he could only write a little. However, this is also inconsistent with his successful completion of helicopter maintenance training and his ability to perform such maintenance. The record does not document mild mental retardation throughout his developmental period or at any time since then.

(*Id.* at 17 (internal citations omitted).)

Thus, the ALJ determined that Malcom does not suffer from a severe impairment. (*Id.* at 18.) After determining that Malcom had not engaged in substantial gainful activity since the alleged onset date of his disability,[6] the ALJ found that Malcom did not have any impairment or impairments that significantly limited his ability to perform work related activities prior to March 31, 1996. (*Id.*) The ALJ observed that Malcom was overstating his functional impairment and that few of Malcom's health complaints were mentioned by his treating physician prior to March 31, 1996. (*Id.*) The ALJ added that Malcom has not presented evidence that his health has prevented him from working in the past or present. (*Id.*) According to the ALJ,

> [Malcom] retains the capacity to perform work activities, without exertional limitations of any kind. I find that the claimant's complaints of back, shoulder and knee pain and bilateral hearing loss are "non severe" impairments, as they have no significant effect upon the claimant's physical and emotional ability to perform basic work activities prior to the date last insured.

(*Id.*) Based on this determination, the ALJ found that Malcom was not disabled under the Social Security Act. (*Id.*)

## III.   STANDARD OF REVIEW

---

[6]As the Commissioner points out (D.I. 12 at 16), there is documentary evidence in the record which contradicts the ALJ on this conclusion. At several points in the record, Malcom's own statements indicate that he was engaged in substantial gainful activity. (*See supra* Section II.B.1.)

Judicial review of the denial of an application for Social Security benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); see *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999) (defining "substantial evidence"). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV.   DISCUSSION

Malcom asserts that the ALJ's findings are not supported by substantial evidence for four reasons. (D.I. 10 at 2-4.) First, Malcom claims that the ALJ ignored the VA's findings that he was unable to maintain substantial gainful employment. (*Id.* at 2.) Second, Malcom says that the ALJ did not give sufficient weight to the uncontradicted evidence of Dr. Iqbal that Malcom has a low IQ of 64. (*Id.*) Third, Malcom argues that the ALJ did not give proper weight to the opinions of two physicians, Dr. Rodgers and a Dr. Charles Mauriello. (*Id.* at 3-4.) Fourth, Malcom says that the ALJ failed to give sufficient weight to Malcom's complaints of pain in his back and shoulder, as well as his difficulty hearing. (*Id.* at 3.) My decision to remand rests upon the first argument.

### A.   *The VA's Findings Must be Given Substantial Weight*

Malcom asserts that the ALJ erred because he did not give substantial weight to the findings of the VA, that Malcom was "unable to maintain substantial gainful employment," which Malcom argues is the same standard the ALJ was bound to apply.

11

(D.I. 10 at 2.) The Commissioner's response is basically a concession that the ALJ glossed over the VA's determination but that that shouldn't matter because it is "not a requirement at step two" of the analysis for the ALJ to do so and, in any event, there was voluminous medical evidence that should constitute satisfactory indirect consideration of the VA's findings. (*See* D.I. 12 at 20 n.7.)

I disagree with the Commissioner's contention that the VA's decision is something the ALJ can rightly pass over without discussion. First, although the Commissioner emphasizes, literally, by underlining, the government's contention that the VA finding of partial disability has no relevance to step two in the five step analysis for benefits eligibility, the Commissioner gives no authority for that position, a position that is certainly not self-evidently correct. Since, "[a]t step two, the claimant must demonstrate that she suffers from a 'severe medically determinable physical or mental impairment,'" *Boone v. Barnhart*, 353 F.3d 203, 205 n.4 (3d Cir. 2003) (quoting 20 C.F.R. § 416.920(a)), it stands to reason that a sister agency's determination regarding physical or medical impairment bears consideration.

That is not to say, of course, that another agency's decision is determinative. On the contrary, the United States Court of Appeals for the Third Circuit has noted that "the determinations of other government or non-governmental agencies are not binding on social security benefits decisions." *Gifford v. Barnhart*, 129 Fed. Appx. 704, 707, 2005 WL 995511, at *3 (3d Cir. Apr. 29, 2005). At the same time, however, the Court has indicated that an ALJ should thoroughly consider the medical evidence relied on by such an agency. *See id.* ("Nonetheless, the ALJ thoroughly considered the medical evidence provided by the Pennsylvania State Employee's Retirement System in

reaching the conclusion that Gifford was not eligible for disability benefits during the relevant time periods.") The Commissioner must give substantial weight to the opinion of a doctor hired by a state agency to determine whether a claimant is disabled, even if it is not bound to the state agency's ultimate determination. *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980) (finding that the plaintiff had submitted substantial evidence of her disability by submitting "the report of Dr. Clayton, who was hired by the Dauphin County Board of Assistance to determine whether claimant was disabled in regard to her obtaining welfare benefits. Dr. Clayton found that claimant 'cannot work.' This doctor made the finding for another government agency, and his finding is entitled to substantial weight."); *see also Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979) (finding that where an "expert body made a determination of disability on less evidence than was submitted to the ALJ[,]" the ALJ's failure to consider that determination was error).

By that same reasoning, the ALJ should offer at least some rationale for disagreeing with the VA's conclusion. There does appear to be in this record a sufficient basis for deciding that, although the VA decided to award Malcom a pension, he nevertheless fails to qualify for Social Security disability benefits.[7] That, however, is

---

[7] The VA's standards for disability pensions are not the same as the standards for receiving Social Security disability benefits. According to the Veterans Benefits Manual ¶ 6.1.2, "VA regulations establish five basic eligibility requirements for pension:
1. The veteran must be discharged under other than dishonorable conditions.
2. The veteran must have active service that includes a total of ninety days during one or more periods of war; ninety or more consecutive days, one day of which is during a period of war; or at least one day of wartime service that results in a discharge for a service-connected disability.
3. The veteran must have limited income and a net worth that does not provide adequate maintenance . . .

a question for the ALJ to determine in the first instance. In this regard, the observations of the Third Circuit more than three decades ago are still relevant:

> It is clear from the record before us that it apparently escaped the attention of the Trial Examiner, the Appeals Council, and the District Court, that the VA had classified [the claimant] as 'permanently and totally' disabled as a result of various physical ailments. Since this critically relevant and material evidence was overlooked below, we must vacate the judgment of the District Court and order that the case once again be remanded to the Secretary.[8]

Pulaski v. Finch, 415 F.2d 613, 618 (3d Cir. 1969).

In short, "[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies are different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Although the VA's determination in Malcom's case was not that he was totally and permanently disabled, that agency did find him eligible for disability benefits. It is not clear that the

---

4. The veteran must be permanently and totally disabled at the time of the application for pension.
5. The permanent and total disability must not be due to willful misconduct of the veteran"

The findings of the VA regarding Malcom were that he "does not meet the schedular requirements of a single disability ratable at 60 percent or more, or two or more disabilities combining to 70 percent with at least one ratable at 40 percent. However, considering the level of disability and other factors, such as veteran's age, education and occupational background, an extraschedular permanent and total disability rating is authorized subject to approval by the Adjudication Officer. The veteran is 49 years old, has a level of education reported as 8th grade, and last worked in 2/96 as mechanic. The medical evidence shows the veteran has restricted motion in both shoulders due to degenerative joint disease and tendinitis. He also has hypertension which is controlled with medication." (D.I. 8 at 453.)

[8]The "Secretary" referred to here was the Secretary of Health, Education and Welfare, within whose Department the determinations of social security disability benefits were then made.

14

VA's decision was considered by the ALJ in this case and therefore the case will be remanded.

B.  *The Remaining Arguments*

Malcom's remaining arguments have less merit. Malcom asserts that the ALJ failed to give proper weight to Dr. Iqbal's finding that Malcom had mild mental retardation. (D.I. 10 at 23-27.) In effect, the ALJ reversed his own earlier finding that Malcom's condition was "severe." But there is ample evidence in the record to contradict the results of the 2002 IQ testing and support the ALJ's changed conclusion. Indeed, there is precious little in the record to support a finding of mental retardation, except for that testing and Malcom's failure to move past the eighth grade despite his being 16 years old. His literacy skills, his training as a helicopter mechanic, and his work as an automobile mechanic, an automobile painter, and a truck driver all indicate that he does not have a severe mental impairment.[9]

The fact that Malcom apparently never once mentioned mental retardation as a basis for disability is also telling. He has been applying to government agencies for years, seeking, as he put it, "all the benefits from all the agencies." (D.I. 8 at 547.) He has advanced a variety of reasons for his claims of disability, and he has had the assistance of counsel and of consulting professionals during those efforts. Had there been any documentation of even a learning disability, let alone mental retardation, one

---

[9]In making these comments, I do not intend in any degree to disparage the level of effort Malcom may have had to exert to achieve the level of training he has and to work in the capacities in which he has worked. He may be, as he argues, of less than average intelligence, and so his successes are the more commendable. But being of below average intelligence and being severely impaired by mental retardation are very different things, and the former does not imply the latter.

15

would have expected it to come to light. Yet, as the Appeals Council observed, "the diagnosis of mild mental retardation appears to be inconsistent with the evidence of record" (*id.* at 44), and, as the ALJ said upon reviewing the record for a second time, "[t]he record does not document mild mental retardation throughout his developmental period or at any time since." (*Id.* at 17.)

This case is thus plainly distinguishable from *Markle v. Barnhart*, 324 F.3d 182 (3d Cir. 2003), which is cited by Malcom, because in that case, "the evidence before the ALJ [was] consistent with a finding that Markle's mental condition remained constant from childhood through the present, the only change being that his physical condition worsened as the years went by." *Id.* at 188. The present case is more like *Williams v. Sullivan*, 970 F.2d 1178 (3d Cir. 1992), in which the Third Circuit observed that the plaintiff's IQ score did not establish deficient intellectual functioning during the developmental period but "measured only his 'current intellectual functioning,' ... and did not document lifelong mental retardation." *Id.* at 1185. The Court noted that the plaintiff had a work history inconsistent with retardation, which led it to comment that the plaintiff had, "presented no evidence of a traumatic condition that would cause mental retardation to spring into existence at an adult age." *Id.*

Dr. Iqbal's report is the only data point showing retardation, and even that report is less than helpful to Malcom. Although Dr. Iqbal concluded that Malcom was mildly retarded, he also concluded that Malcom had "no more than mild limitations in work related functional abilities." (D.I. 8 at 548, 550-551.) The ALJ evidently found that latter aspect of Iqbal's report persuasive. Malcom condemns the ALJ for agreeing with

16

only part of Dr. Iqbal's report, but Malcom himself would like to pick and choose, accepting the portion of Dr. Iqbal's findings that supports his claim while disregarding those portions that do not. (D.I. 13 at 2-3.) Malcom claims the intelligence testing Dr. Iqbal ran is "objective" and "credible" while Dr. Iqbal's opinions are not. (D.I. 13 at 3.) The ALJ, however, was entitled to judge Dr. Iqbal's evidence and opinion in light of the entire record and, having done so, to conclude that Malcom does not have a "severe" impairment within the meaning of the regulations.

Malcom's argument that the ALJ did not give proper weight to the opinions of Dr. Stephen Rodgers and Dr. Charles Mauriello (see D.I. 10 at 3) is also without merit. Dr. Rodgers apparently never examined Malcom, and his report contains no objective findings to support his conclusion that Malcom was disabled prior to the date he was last insured. As the ALJ said in his first opinion:

> The report [by Dr. Rodgers] is simply a recitation of the medical record with an unsupported conclusion of disability at the end. As no medical record indicates; the claimant does not alleged [sic]; nor does this physician explain; the reader of this report is left with no understanding as to why Dr. Rodgers selected 1991 as his disability onset date or how he came to the conclusion of disability.

(D.I. 8 at 40.) Given the overall record before the ALJ, there is more than sufficient evidence to support the ALJ's determination to reject Dr. Rodgers' opinion.

Dr. Mauriello examined Malcom in August 1997, while Malcom was seeking his VA pension. While Dr. Mauriello did indeed determine that Malcom had a variety of ailments (id. at 466-70; D.I. 10 at 19 n.3), the only comment he made about Malcom's functional capacity was that

> [b]ased upon the claimant's history and physical examination, there would be a functional problem involving the right upper extremity, which would be supported

17

> by the atrophy, and this will result in lack of endurance, lack of strength, weakness, and fatiguability [sic], which will result in decreased range of motion in the right shoulder when he has activities which stress the shoulder.

(D.I. 8 at 470.) The ALJ reviewed the doctor's conclusion and gave it appropriate consideration, saying, "Dr. Charles Mauriello noted symptoms of rotator cuff attrition with intermittent pain [in August 1997] . . . . However, nothing in the medical record documents any objective findings or treatment of the alleged musculoskeletal impairments. Therefore, I find that the record concerning these impairments does not establish a reasonable basis on which vocationally relevant limitations prior to the date last insured could be determined." (*Id.* at 16.) Given that record, the ALJ's treatment of Dr. Mauriello's report is supported by substantial evidence.

Finally, contrary to Malcoms assertion (D.I. 10 at 27-29), the ALJ's report does not show that he completely discounted Malcom's complaints of pain and hearing loss. On the contrary, the ALJ noted Malcom's claims of knee and shoulder pain, but after viewing the record as a whole, including the objective medical findings, the ALJ found that there was not "a reasonable basis on which vocationally relevant limitations prior to the date last insured could be determined." (D.I. 8 at 16.) As to the hearing loss, which was diagnosed as early as 1969 (*id.*), the ALJ did not dispute that it had occurred, but, because of Malcom's military service, "many years of substantial gainful employment," and ability to hear and distinguish speech, the ALJ concluded that the impairment would not "more than mildly limit his ability to hear." (*Id.* at 16-17.) Therefore, the ALJ did not ignore Malcom's complaints. Even considering them, there was substantial evidence supporting the conclusion that Malcom was not disabled.

18

## V.  CONCLUSION

Based on the foregoing reasons and authorities, Malcom's motion for summary judgment (D. I. 9) will be denied, as will the Commissioner's cross-motion for summary judgment (D.I. 11).  The decision of the ALJ will be vacated and the case remanded for further proceedings consistent with this opinion.  An appropriate order will follow.